## Case No. 14,691.

### UNITED STATES v. BURNS.

[5 McLean, 23.] [1]

Circuit Court D. Ohio. Oct. Term, 1849.

COUNTERFEITING—ARTICLES FOUND IN POSSESSION—SPURIOUS COIN—LIABILITY TO DECEIVE—JUDICIAL NOTICE—INDICTMENT—JOINDER.

1. On an indictment for counterfeiting coin, the guilty participation of the defendant in the act may be inferred from proof that a quantity of spurious coin, and instruments and appliances for making it, were found in his possession. Such proof, unexplained by evidence rebutting the presumption of guilt, will be sufficient to justify a verdict of guilty.

[Cited in U. S. v. Otey, 31 Fed. 70.]

2. On the trial of such an indictment, there must be proof sustaining the averments, that the coins alleged to have been made were in the likeness and similitude of genuine coins.

3. If the spurious coin, from its incompleteness, or the defectiveness of its manufacture, is not fitted to deceive persons of the most ordinary caution and intelligence, the inference of a criminal intention in making it does not arise.

[1] [Reported by Hon. John McLean, Circuit Justice.]

4. It is not necessary to prove, in support of a charge for making American coins, or coins made current by act of congress, that there are genuine coins, of which, those alleged to have been made, were counterfeits. The court and jury, will take notice without proof, of the legal coins made at the mint of the United States pursuant to law, and of foreign coins made current by law.

5. The designation in the indictment of the coins, alleged to have been made, as coins called fifty cent pieces and twenty-five cent pieces, instead of the half dollar and the quarter dollar, by which names they are called in the act of congress regulating the coinage of the country, is not a material variance, and will not support a motion in arrest of judgment.

6. One or more good counts in an indictment, though there may be some that are bad, will sustain a general verdict of guilty.

7. In an indictment framed on the 20th section of the crimes act of the 3d of March, 1825 [4 Stat. 121], it is not a misjoinder to add to the counts charging the making of false coin, a count for aiding and assisting in making such coins, and one for procuring them to be made.

[Cited in U. S. v. Lancaster, 44 Fed. 894.]

[This was an indictment against James Burns for counterfeiting coin.]

Mr. Mason, U. S. Dist. Atty.
Mr. Perry and Mr. Cushing, for defendant.

LEAVITT, District Judge. The indictment in this case is framed under the 20th section of the act of congress of the 3rd of March, 1825, "more effectually to provide for the punishment of certain crimes against the United States, and for other purposes." 4 Stat. 121. It is provided in this section, that "if any person or persons shall falsely make, forge, or counterfeit, or cause or procure to be falsely made or counterfeited, or willingly aid or assist in falsely making, forging, or counterfeiting any coin, in the resemblance or similitude of the gold or silver coin, which has been or may hereafter be coined at the mint of the United States; or, in the resemblance or similitude of any foreign gold or silver coin, which by law now is, or may hereafter be made current in the United States, &c., he shall be deemed guilty," &c. There are six counts in the indictment: 1. Making a counterfeit silver coin of the United States, called twenty-five cents; one called fifty cents; and a foreign coin, made current by law, called five francs. 2. Making an American coin called fifty cents. 3. Making a large quantity—viz: twenty pieces of American coin called fifty cent pieces; twenty-five pieces called twenty-five cent pieces; twenty pieces foreign coin called twenty-five cent pieces; and twenty pieces of foreign coin called five francs. 4. Making ten pieces of American coin called fifty cent pieces, or half dollars. 5. Aiding and assisting some person, to the jurors unknown, in making and counterfeiting sundry coins. 6. Causing and procuring the making of false coins.

Without attempting a minute recapitulation of the evidence of all the witnesses for the prosecution, it will be sufficient to call the attention of the jury to the prominent and material facts proved. These facts are: that the defendant, some time previous to his arrest, rented a tenement on Baum street, in the city of Cincinnati, the basement of which, was occupied by himself, and one Rogers, and the other parts were rented by the defendant to other persons. In September, 1848, the witnesses Legge, Davidson, and Blackburn, having a warrant for the arrest of the defendant and the said Rogers, entered the basement room of the house referred to. They found Rogers and arrested him; the defendant was not there. The witnesses state, that in this room they found on a table, a considerable quantity of counterfeit coin, some of which was in an unfinished state. In a trunk they found a leathern bag filled with counterfeit half dollars and five franc pieces, which were finished. There were also in the room, several bars of metal, and a box containing moulds for making five franc pieces, half and quarter dollars, and half eagles. It is also proved, that on several occasions previously to the arrest of Rogers, the defendant had purchased plaster of Paris, alleging at one time, that he wanted it for dental purposes, and at another for making busts. On one occasion he purchased a box full of plaster which was put up by the witness, and the box marked by him, and which, being shown to him in court, he identified as being the same box which contained the plaster, and which was found by the officers in the room referred to, occupied by the defendant and Rogers. The defendant was subsequently arrested on the Kentucky side of the Ohio river, a short distance below the mouth of Big Sandy. When arrested he was trying to make his escape. On his person were found some counterfeit five franc, half dollar, and quarter dollar pieces. He denied that he had passed any counterfeit coin, but on being reminded of his connection with Rogers, said he had kept more of that kind of company than was good for him, and inquired if he could not be relieved from his difficulty by enlisting as a soldier in the service of the United States.

It is insisted by the counsel for the defense, that this evidence does not establish the guilty agency of the defendant, in making, or aiding to make, any of the false coin, described in the indictment. On this point, it will be sufficient to remark, that the law raises a presumption of guilt from the circumstances proved. The defendant was the lessee, and had been the actual occupant, in connection with Rogers, of the room in which a large quantity of spurious coin, and various instruments and appliances for coining were found. It is also proved that a box containing plaster of Paris, purchased by the defendant, was found in the room, and when arrested, several pieces of counterfeit coin were found upon his person. These are circumstances from which, unexplained by testimony on the part of the defendant, relieving him from the suspicions and inferences other-

vise arising, the jury may rightfully presume his criminal participation in making he spurious coin found in his possession.

It is also insisted in argument, that there is no proof that the coins found in the defendant's possession are in the likeness and similitude of the genuine coins, of which they are alleged to be counterfeit imitations. This is undoubtedly one of the material allegations in the indictment, which must be sustained by the evidence, to the satisfaction of the jury. It is of the essence of the crime imputed to the defendant, that he made, or assisted in making the spurious coin, with the fraudulent intent of passing it as genuine. And it is certain that no such intent can be fairly presumed, unless the coin was of a character, and in a condition to be used for purposes of fraud and imposition. It would seem from the evidence that a portion of the coin found in the defendant's room, was in an unfinished state, and therefore not prepared for use. The statute provides no punishment for the manufacture of unfinished coin; nor is that the charge exhibited against he defendant in the indictment. There was part of the coin found by the witnesses, which was in a finished state. The precise character and appearance of the coin are not stated by the witnesses. It will be for the jury to say, whether they were so far artistically complete as to be used successfully for he purposes of deception and fraud. If, from incompleteness, or the clumsiness of the manufacture, men of very ordinary circumspection and intelligence could not be imposed on by them, there is no ground for the inference that they were designed for fraudulent use. The jury however will bear in mind that it is the object and the policy of he law, to protect all classes of community from frauds and impositions, connected with attempts to pass spurious coins. There are many whose experience and intelligence do not qualify them for a very accurate judgment of the character of coin, and such may be defrauded by it, while others of greater experience and skill in these matters would reject it without hesitation. It will be for the jury to say, whether the evidence in this case sustains the averment, that the coin made by the defendant was "in the likeness and similitude of genuine coin."

It has been also suggested by counsel, that the jury cannot convict in this case, for the reason that no proof has been offered on the part of the prosecution, of the fact that there are genuine coins, of which those mentioned in the indictment are counterfeits. It was not necessary that such proof should be offered. There are some facts, of which a court and jury will take notice, without formal proof. That the coins named in the indictment as fifty cent pieces or half dollars, or as twenty-five cent pieces, are legal subdivisions of the dollar, authorized to be coined by the mint of the United States, is a fact within the judicial cognizance of this court,

upon which the jury may act without evidence.

The jury returned a general verdict of guilty.

On a subsequent day of the term, the counsel for the defense filed a motion in arrest of judgment. Judge McLEAN was not present at the argument of this motion. It was overruled by Judge LEAVITT for reasons substantially as follows:

The first five of the numerous grounds stated in the motion in arrest of judgment, filed in this case, are based on technical exceptions to the caption of the indictment. These may be summarily stated as follows: That the caption does not state when or where the indictment was found; or, the names of the jurors by whom it was found, nor the place from whence they came; or, that they were good and lawful men; or, that the venire was duly served and returned. These exceptions do not call for special consideration, and may be disposed of by the remark, that the form of the caption of the indictment is in strict accordance with the forms used in this court, from its organization. There seems to be no ground for a doubt as to its sufficiency.

The court will, therefore, proceed to notice the other reasons urged in support of this motion. The first and most prominent of these is, that the indictment charges no crime under the statute. It is urged in support of this ground, that the first three counts of the indictment, charging the act of making counterfeit coins, described the coins made as "fifty cent," and "twenty-five cent" pieces, and are fatally defective in not designating these coins by the names used in the statute authorizing their coinage by the mint of the United States. It is true, the names used in those counts of the indictment, descriptive of the coins, are not verbally identical with those used in the statute. The 9th section of the act of congress of April 2, 1792, for "establishing a mint, and regulating the coins of the United States" (1 Stat. 248), authorizes, among other coins, the coinage of dollars, to be of the value of the Spanish milled dollar; "half dollars," to be half the value of the dollar, and "quarter dollars," to be one-fourth the value of the dollar. Is it essential that these terms should be used in the indictment, as designating the coin alleged to have been counterfeited? In the view of the court, this discrepancy is not a material variance.

If the section of the statute, under which this indictment is framed, specifically designates by name the various coins, for the fraudulent making of which it provides a penalty, there would be a strong show of reason for insisting on the use of the precise terms of the statute. But the section referred to, provides in general terms for the crime of counterfeiting the gold and silver coins of the country, and foreign coins made

current by law, without naming them. The fact, that in the act regulating the coinage of the country, the pieces of coin charged in the indictment to have been forged, are designated by names different from those used in the indictment, if those names are pertinent, and of equivalent meaning, affords no sufficient ground for arresting the judgment. The gist of the crime consists in the fraudulent making of false coin. In charging the crime in the indictment, it is necessary to describe specifically, by name and denomination, the coin alleged to have been made. But there is no principle requiring that the precise terms used in the statute, should be used in the indictment. If equivalent terms are used—terms popularly and universally known and understood as identical with those in the indictment—it will be sufficient. Now these parts of a dollar, described in the indictment as pieces called "fifty cents," and "twenty-five cents," are as accurately designated, and as well understood by those terms, as if they had been called the "half dollar," and the "quarter dollar." And the court and jury will take notice, without proof, that a fifty cent piece, or a twenty-five cent piece, is identical in its meaning and import with the half dollar, and the quarter dollar, respectively. Any other view of this question, would involve a strictness and rigidity of construction, not required by any established principle of criminal law, and violative of the plain teachings of common sense. It is true, that great certainty and precision are required in setting out a criminal charge in an indictment. But, in stating this as an admitted rule in the administration of criminal law, the reason on which it is based should be kept in view. That reason obviously is, that the accused may know with certainty the specific crime for which he is arraigned, and enjoy the most ample privilege of meeting and repelling the charge. It is not perceived that the conclusion here announced, can, by possibility, restrict or infringe upon this right. True, the precise words used in the statute, are not used in the indictment; but those used in the latter, are of equivalent and identical import with those in the statute. It is impossible that the defendant could be misled by the use of these terms, or that they could offer any hindrance in the preparation of his defense.

But if the court entertained an opinion different from that here announced, on the point under consideration, it would afford no ground for arresting the judgment in this case. The exception referred to applies only to the first three counts. In the fourth count, the charge set out, is, the making sundry pieces of American coin, called "fifty cent pieces," or "half dollars." Here the term used in the statute before referred to, regulating the coinage, is used in the indictment. That in the designation of the coin, the alternative form of expression is adopted, constitutes no objection to the count. If this count is good, though the others should be adjudged bad, the verdict of guilty is sustained. This is now understood to be the doctrine sanctioned in the American courts, if not elsewhere. It has heretofore received the approval of this court. In the case of U. S. v. Burroughs [Case No. 14,695], Judge McLean, in giving his opinion on a motion in arrest of judgment says: "If the first count be bad, there being other counts in the indictment which are good, on a general verdict of guilty, the judgment can not be arrested. In this, an indictment differs from a declaration. For one defective count in the latter, the judgment must be arrested; while in the former, one good count sustains the verdict."

This view disposes of the motion in arrest. There is, however, another point insisted on in support of the motion, which it may be well to notice. This point is, that there is a misjoinder of offences in the indictment, that calls for the arrest of the judgment. The alleged misjoinder consists in uniting with the counts charging the defendant with making false coins, the distinct offences of aiding and assisting some other person in such making, and causing and procuring some other person to make such coins. These are set forth respectively, in the 5th and 6th counts. The rule in relation to the joinder of distinct offences in different counts of the same indictment, is well settled. The test is, that the judgment be the same for each offence. Rosc. Cr. Ev. 216. Now the crimes charged in all the counts of this indictment, are embraced in the same section of the statute, and the same judgment follows each. There is, therefore, clearly, no misjoinder.

The motion in arrest being overruled, judgment was entered on the verdict, that the defendant be confined in the penitentiary, at hard labor, for five years.