UNITED STATES *v.* OTEY and another.

*(Circuit Court, D. Oregon. June 13, 1887.)*

1. COUNTERFEITING—INDICTMENT—SUFFICIENCY.

An indictment under section 5457, Rev. St., for counterfeiting, which states that the defendant "did falsely make, forge, and counterfeit four pieces of silver coin, of the coinage of the United States, called a dollar," is sufficient after verdict; the words of the section, "in resemblance or similitude of the coins coined at the mints of the United States," being a mere variation or exposition of the principal phrase, "falsely make, forge, or counterfeit" such coins; and the phrase "coinage of the United States" being the exact legal equivalent of "coins coined at the mints of the United States."

2. SAME—INTENT TO DEFRAUD.

It is not necessary, in an indictment for counterfeiting, under said section, to allege that the act of counterfeiting was done with intent to defraud; and such intent, if an element of the crime as defined by the statute, is implied in the allegation of "falsely" making, and need not be specifically alleged.

*(Syllabus by the Court.)*

Motion in Arrest of Judgment.

*Lewis L. McArthur,* for the United States.

*William R. Willis,* for defendants.

DEADY, J. On April 7, 1887, the defendants were accused by the grand jury of this district of the crime of counterfeiting. The indictment states that on November 16, 1886, in this district, "the defendants did falsely and feloniously make, forge, and counterfeit four pieces of silver coin of the coinage of the United States of America, called a dollar, contrary to the statutes in such case made and provided, and against the peace and dignity of the United States of America." The defendants pleaded not guilty to the charge, and on a separate trial Otey was found guilty as charged in the indictment. He now moves in arrest of judgment, because the facts stated in the indictment do not constitute a crime, in that (1) it does not state that the coin in question was made in the similitude and resemblance of any silver coins coined at the mint of the United States; and (2) it does not state that said coins were made with intent to defraud any person whatever.

The indictment was found on section 5457 of the Revised Statutes, as amended by the act of January 16, 1877, (19 St. 223.) So far as this case is concerned, it enacts that every person who falsely makes, forges, or counterfeits any coin in resemblance or similitude of the silver coins which have been or hereafter may be coined at the mints of the United States, or who passes, utters, publishes, or sells, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any other person whatsoever, or has in his possession any such false, forged, or counterfeit coin, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any other person whatsoever, shall be punished by a fine of not more than $5,000, and by imprisonment at hard labor not more than 10 years.

Section 20 of the act of 1825 (4 St. 121) defined the crimes of counterfeiting and uttering counterfeit coin in substantially the same language as the act of 1877, but it did not include the case of "bars" stamped at the mints of the United States, nor that of having counterfeit coin in possession, with intent to defraud. This was succeeded by section 61 of the coinage act of 1873, (17 St. 434,) which was in all respects like the act of 1877, except that it contained no provision as to the intent of the party violating any of its provisions; and the act of 1877 repealed and re-enacted this last section, with the addition of the clauses concerning the intent to defraud.

The words of the statute, "in resemblance or similitude," are a mere variation or exposition of the principal and preceding words thereof, "falsely make, forge, or counterfeit," each of which means to make something in the resemblance or similitude of another. If they were dropped out of the statute, its legal significance and effect would not be modified or restrained. To falsely make, forge, or counterfeit a silver coin of the coinage of the United States is to make something in the "resemblance or similitude" of such coin. The explanatory words add nothing to the legal sense and common acceptation of the principal ones. Therefore the former are necessarily included in the latter. It is an instance of tautology and verbosity, inherited from the past, in which the statute abounds.

In the definition of the crime of assault with a deadly weapon, if the statute reads, "Whoever is convicted of an assault with a deadly weapon, calculated to take life, shall be punished," etc., the qualifying words, "calculated to take life," add nothing to the description already given of the offense. So with the words "in resemblance or similitude," in this case. They add nothing to the crime otherwise defined by the statute. The accused is as well "informed of the nature and cause of the accusation" against him without them as with them. They inform him of nothing that he is not fully apprised of by the allegation,—that he counterfeited a silver coin of the coinage of the United States called a dollar; and the proof necessary to support the indictment is the same whether these words are used therein or not. The money alleged to have been falsely made, is not a counterfeit of such silver dollar, unless made "in the resemblance and similitude" thereof, and so much so as to be calculated to deceive persons of the most ordinary apprehension, and under any circumstances; and so the jury were instructed on the trial.

It may be admitted that, as these words are used in the statute defining the offense of counterfeiting, they may very properly be used in an indictment thereunder. And I see they are contained in the precedent which Mr. Bishop furnishes (Bish. D. & F. § 333) of an indictment under the United States statute against the counterfeiting of coin. But, in my judgment, they are not necessary. They are the mere tautology of the words already used in the statute and the indictment. It is sufficient to pursue the statute substantially; and this is done when the accused is charged with falsely making, forging, and counterfeiting four pieces of silver coin of the coinage of the United States, called a dollar.

And the phrase, "coinage of the United States," is also the exact legal equivalent of the language of the statute regarding the coin that may be the subject of this crime,—that which is "coined at the mints of the United States."

It is a matter of law, of which the court will take notice, that the coinage of the United States, or the coins made by the United States, are made or "coined at the mints of the United States," and not elsewhere. But, at the most, this is only an imperfect statement of an essential matter, and is cured by the verdict. The allegation in the indictment that the defendant counterfeited "four pieces of silver coin of the coinage of the United States" was sufficient to admit the proof that these four pieces were falsely made by the defendant "in the resemblance and similitude" of the silver coins then or theretofore coined at the mint of the United States; and the verdict necessarily implies that such was the proof, and that the jury so found. Whart. Crim. Pl. § 760.

As to the second point, the case was tried on the theory that the defendant could not be convicted unless it appeared that he made the spurious coin with the fraudulent intent of putting it in circulation as genuine; and the jury were so instructed. But, as we have seen, there is no distinct allegation in the indictment that the defendant did the counterfeiting with intent to defraud any particular person, or generally. Now, if such intent is a part of the statutory definition of the offense, it must be expressly alleged in the indictment; and a verdict of guilty does not cure the omission. It is the case of a failure to state one of the essential ingredients of the crime. But, where the intent is *prima facie* to be inferred from the facts stated, it must not be specifically averred, unless a part of the statutory definition of the offense. Whart. Crim. Pl. § 163a. For instance, larceny is defined to be the wrongful taking and carrying away of the goods of another, with the intent to appropriate them to the use of the taker. Rap. & L. Law Dict. "Larceny." But such an intent need not be specifically averred in an indictment therefor. Bish. D. & F. § 582.

*Prima facie*, the intent is inferred from the facts stated,—that the defendant did feloniously take and carry away the goods,—which inference may be overcome by proof that they were not so taken and carried away. On this point counsel for the defendant cites *U. S.* v. *Burns*, 5 McLean, 23; *U. S.* v. *King*, Id. 208; and *U. S.* v. *Abrams*, 18 Fed. Rep. 823.

The cases cited from 5 McLean arose under the act of 1825, in which it appears to have been taken for granted that the crime of counterfeiting, as defined by that act, involved an intent to defraud. In the latter of the two cases, a defense was made, on the trial, that the spurious coins mentioned in the indictment were made for an innocent purpose, namely, for use in a magic performance; and the court (LEAVITT, J.) instructed the jury that it was good in law. A brief synopsis of the indictments in both these cases is given in the report, but it does not appear therefrom that there was any specific averment that the spurious coin was made with intent to defraud any one, or in general.. And the court in the charge to the jury in *U. S.* v. *King* (page 211) assumes that

it is a case in which the fraudulent intent is inferred, *prima facie*, from the fact that the act was alleged to have been "falsely" done, and therefore need not be specifically alleged. Judge LEAVITT says:

"The penalty of the statute on which the indictment is framed is denounced against any person who shall *falsely* make or counterfeit the coin of the country. The use of the word 'falsely' in the statute implies that there must be a fraudulent or criminal intent in the act. And the statute contemplates no other intent, in the act of making, as necessary to constitute the crime, but that of disposing of or passing the spurious coin as true or genuine."

In *U. S.* v. *Abrams*, *supra*, the defendant was indicted, under section 5457 of the Revised Statutes, for counterfeiting the trade dollar of the United States, and found guilty. It appears that the spurious coins were made of tin and antimony, resembling in shape and design the trade dollar; and that the accused intended to coat them with silver before putting them in circulation. On the trial the court instructed the jury—

"That the prisoner could be convicted if they found that he made the coins with intent to circulate them, and had carried the manufacture so far as to produce coins capable of being uttered as genuine trade dollars, notwithstanding there was evidence that he intended to coat the coins with silver before putting them in circulation."

On a motion for a new trial, (before WALLACE, BENEDICT, and BROWN, JJ.,) the charge was held correct. BENEDICT, J., speaking for the court, said:

"It is true that, in one sense, the coins were unfinished; that is to say, they were not finished as the prisoner intended to finish them. But, in another and truer sense, they were finished, for they were capable of being put in circulation as genuine coin. So the jury have found. The ingredients of the offense created by the statute are an act and an intent. The act is making a false coin capable of being circulated as genuine. The intent is an intent to defraud."

Now the plain teaching of the two cases from 5 McLean is that the clause in the act of 1825 concerning the intent to defraud is no part of the statutory definition of the crime of counterfeiting, and that the fraudulent intent of which the court speaks is one implied from the nature of the charge, and need not be specifically averred. Nor does *U. S.* v. *Abrams*, *supra*, hold anything to the contrary. This question was not directly before the court in that case; but what was said of the crime consisting of the act and intent in no way conflicts with the theory advanced in *U. S.* v. *King*, that the fraudulent intent is an implication or inference which follows of course from the fact of making spurious coin capable of being put into circulation as genuine.

After a careful examination of the statute and the subject, I am convinced, contrary to my first impression, that the knowledge and intent to defraud mentioned in section 5457 of the Revised Statutes refer only to the crime of passing counterfeit money, or having the same in possession; and therefore an indictment for counterfeiting need contain no averment on the subject. And the very fact that the qualification of knowledge and intent to defraud is expressly stated twice in the section, in the same words, in the definition of the crimes of passing and possessing

counterfeit coin, and not in the definition of the crime of counterfeiting it, shows plainly that it was not the intention of congress to make these circumstances an element of the latter crime. As the statute is drawn, if it was intended to make an intent to defraud an express ingredient of the crime of counterfeiting, it would have been so stated before proceeding to the definition of the crimes of possessing and passing spurious coin. In the before-mentioned precedent furnished by Mr. Bishop, of an indictment for counterfeiting under this statute, there is no allegation that the spurious coin was made with intent to defraud.

The fraudulent intent mentioned in the statute is an essential element of the crime of passing counterfeit money, or having the same in possession; and the act of passing or possessing must be accompanied by knowledge of the false character of the coin. But, in the case of the actual forger or counterfeiter, knowledge of the character of the coin, and the fraudulent intent to put it in circulation, in some way, as genuine, are implied from the fact of the false making, and need not be specially averred. Indeed, in the late case of *U. S.* v. *Russell*, 22 Fed. Rep. 390, (Circuit Court D. Mass.,) an indictment for counterfeiting contrary to this statute, WEBB, J., held that the making of counterfeit coins in the resemblance and similitude of the coins of the United States is absolutely prohibited, and he instructed the jury as follows:

"The only question is whether the accused did, in fact, forge or counterfeit such coins as charged against him in the indictment. If he did, he cannot excuse himself by showing what was his intention, or that he did not intend himself to use the coin he so made for fraudulent purposes, or that they should be so used by others. Nor can he be excused on account of his ignorance of the law,—that it did not allow him to do what he did."

And, if this is not the law, congress ought to make it so. No one ought to be allowed to trifle with the integrity of the coin of the realm. The circulating medium of a people is the life of its trade and intercourse, and ought not to be exposed to the danger of corruption from contact or commingling with the spurious coinage of amateur forgers and counterfeiters.

But, be this as it may, the indictment is sufficient, and the motion in arrest of judgment must be disallowed.

On the trial of the case the defendant had the benefit of the ruling that the allegation of falsely making, forging, and counterfeiting the coin in question implied that he did so with intent to defraud. And the jury were instructed that he could not be convicted unless they found that in fact such was the intent,—of which, I am sorry to say, there was no room for doubt.

The motion is denied, and the defendant is ordered to appear for sentence and judgment on the verdict.