## KAYE v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1910. Petition for Rehearing Overruled February 11, 1910.)

### No. 1,454.

1. CRIMINAL LAW (§ 878*)—TRIAL—MISDEMEANOR AND FELONY—SUBMISSION—GENERAL VERDICT.

Charges of misdemeanor and of felony having been joined in an indictment in five counts, a general verdict of guilty was returned, on which the court assessed punishment as for felony. No instructions as to the form of the verdict were requested by defendant, nor was any exception taken to the instructions given, nor was there any objection interposed to the verdict as returned, nor any motion made that the jury be directed to specify the counts under which they found defendant guilty. *Held*, that the verdict should be construed as finding defendant guilty as charged in each count of the indictment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2098-2101; Dec. Dig. § 878.*]

2. COUNTERFEITING (§§ 6, 12*)—STATUTES—CONSTRUCTION—"DEVICE, PRINT, OR IMPRESSION, OR ANY OTHER THING WHATSOEVER."

Act Cong. Feb. 10, 1891, c. 127, § 3, 26 Stat. 742 (U. S. Comp. St. 1901, p. 3687), provides that every person who makes, or causes or procures to be made, or shall bring into the United States from any other country, or shall have in possession with intent to sell, give away, or in any other manner use the same, any business or professional card, notice, placard, token, "device, print, or impression, or any other thing whatsoever," in likeness or similitude as to design, color, or the inscription of any of the coins of the United States or of any foreign country that have been or hereafter may be issued as money "either under the authority of the United States or of any foreign government," shall, on conviction, be punished by a fine not to exceed $100. *Held*, that the words "device, print, or impression, or any other thing whatsoever" must be read in connection with and construed as being of the same general nature as their companion words, "business or professional card, notice, placard, token," and not to cover counterfeit molds and counterfeit coins, the making of which is punishable under section 1 as a felony.

[Ed. Note.—For other cases, see Counterfeiting, Dec. Dig. §§ 6, 12.*]

3. COUNTERFEITING (§ 3*)—INTENT.

Act Cong. Feb. 10, 1891, c. 127, § 1, 26 Stat. 742 (U. S. Comp. St. 1901, p. 3686), provides that every person who, within the United States, or any territory, makes any die, mold, etc., in likeness of any die, or mold designed for the coining of genuine coins of the United States, or who shall have in his possession any such die or mold with intent to fraudulently or unlawfully use the same, or who shall permit it to be used for or in aid of the counterfeiting of any of the coins of the United States, shall be punished by fine and imprisonment. *Held*, that such section establishes two offenses, to wit, the making and having in possession of any mold, etc., and that the intent is material only with reference to the having of such things in possession, and not as to the making thereof.

[Ed. Note.—For other cases, see Counterfeiting, Dec. Dig. § 3.*]

4. CRIMINAL LAW (§ 563*)—PROOF—CORPUS DELICTI.

Where accused, when testifying in his own behalf, unequivocally established the commission of an offense, whether there was sufficient proof of the corpus delicti at the conclusion of the government's evidence was immaterial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1269; Dec. Dig. § 563.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. COUNTERFEITING (§ 3*)—STATUTES—CONSTRUCTION—"FALSELY."

Rev. St. § 5457 (U. S. Comp. St. 1901, p. 3683), provides that every person who falsely makes, forges, or counterfeits, or causes or procures to be falsely made, forged, or counterfeited, etc., any coin or bars in resemblance or similitude of the gold or silver coin or bars coined or stamped at the mints and assay offices of the United States, or in resemblance or similitude of any foreign gold or silver coin which by law is, or may be, current in the United States, or are in actual use and circulation as money within the United States, or who passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or bring into the United States from any foreign place, knowing the same to be false, forged, or counterfeited, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, or who has in his possession any false, forged, or counterfeited coin, with intent to defraud, shall be punished. *Held*, that the adverb "falsely" in the opening line of the section qualifies only the verb "makes," since the verbs "forges" and "counterfeits" carry in themselves the idea of falsity, and hence the intent to defraud is only an element of the offense of having in possession with intent to use, etc.

[Ed. Note.—For other cases, see Counterfeiting, Cent. Dig. §§ 5–8; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 3, pp. 2654, 2655.]

In Error to the District Court of the United States for the Southern District of Illinois.

James R. Kaye was convicted of counterfeiting, and he brings error. Affirmed

Under an indictment in five counts plaintiff in error was found guilty by the jury and sentenced by the court to two years' imprisonment at hard labor.

The indictment was drawn under sections 1 and 3 of the act of February 10, 1891 (26 Stat. 742, c. 127; section 5462, Rev. St. [U. S. Comp. St. 1901, pp. 3686, 3687]; Act March 3, 1903, c. 1015, 32 Stat. 1223; section 5462, Rev. St. [U. S. Comp. St. Supp. 1903, p. 445]), which are as follows:

"Section 1. That every person who, within the United States or any territory thereof, makes any die, hub or mold, either of steel or plaster or any other substance whatsoever, in likeness or similitude, as to the design or the inscription thereon, of any die, hub or mold designated for the coining or making of any of the genuine gold, silver, nickel, bronze, copper or other coins of the United States that have been or hereafter may be coined at the mints of the United States, or who willingly aids or assists in the making of any such die, hub, or mold, or any part thereof, or who causes or procures to be made any such die, hub, or mold, or any part thereof, without authority from the Secretary of the Treasury of the United States or other proper officer, or who shall have in his possession any such die, hub, or mold with intent to fraudulently or unlawfully use the same, or who shall permit the same to be used for or in aid of the counterfeiting of any of the coins of the United States hereinbefore mentioned shall, upon conviction thereof, be punished by a fine of not more than five thousand dollars and by imprisonment at hard labor for not more than ten years, or both, at the discretion of the court."

"Sec. 3. That every person who makes, or who causes or procures to be made, or who brings into the United States from any foreign country, or who shall have in possession with intent to sell, give away, or in any other manner use the same, any business or professional card, notice, placard, token, device, print, or impression, or any other thing whatsoever, in likeness or similitude, as to design, color, or the inscription thereon, of any of the coins of the United States or of any foreign country that have been or hereafter may be issued as money, either under the authority of the United States or under the authority of any foreign government, shall, upon conviction thereof, be punished by a fine not to exceed one hundred dollars."

First count was for having in possession, with intent to use, two "devices, prints, and impressions" made of metal and plaster and other substances in similitude of the 25-cent silver coin of the United States.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Second, third, and fourth counts, differing only as to denominations of the coins, were for having in possession, with intent to use the same fraudulently and unlawfully, dies, hubs, and molds made of metal and plaster and other substances in similitude of (severally specified) silver coins of the United States.

Fifth count was for making and causing to be made two dies, hubs, and molds of metal and plaster and other substances in similitude of the 25-cent silver coin of the United States, without authority from the Secretary of the Treasury of the United States or other proper officer, and with the intent to use the same fraudulently and unlawfully.

Section 5457 (U. S. Comp. St. 1901, p. 3683), referred to in the opinion, reads as follows: "Every person who falsely makes, forges, or counterfeits, or causes or procures to be falsely made, forged, or counterfeited, or willingly aids or assists in falsely making, forging, or counterfeiting any coins or bars in resemblance or similitude of the gold or silver coins or bars which have been or hereafter may be coined or stamped at the mints and assay offices of the United States, or in resemblance or similitude of any foreign gold or silver coin which by law is or hereafter may be current in the United States, or are in actual use and circulation as money within the United States, or who passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or bring into the United States from any foreign place, knowing the same to be false, forged, or counterfeit, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, or has in his possession any such false, forged, or counterfeited coin or bars, knowing the same to be false, forged, or counterfeited, with intent to defraud any body politic or corporate, or any other person or persons whatsoever, shall be punished by a fine of not more than five thousand dollars and by imprisonment at hard labor not more than ten years."

The further facts, necessary to be considered, are stated in the opinion.

John F. Greeting and Arthur V. Lee, for plaintiff in error.

Edwin W. Sims, U. S. Atty., W. A. Northcott, U. S. Dist. Atty., and H. A. Converse, Asst. U. S. Dist. Atty.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Charges of misdemeanor and of felony were joined in the indictment, the jury returned their verdict in the form of, "We, the jury, find the defendant guilty," and the court assessed the punishment for felony. Upon this, defendant insists that the judgment must be reversed because, matching the verdict with the indictment, it does not appear but that the jury intended only to find him guilty of misdemeanor. But we are of the opinion that the verdict should be read in the light of the record which defendant helped to make. The trial, with defendant's acquiescence, was an investigation of an alleged misdemeanor and of two classes of alleged felonies. The misdemeanor charge was distinguished from the felony charges in the court's instructions to the jury. Taking the instructions as a whole, we find that the court told the jury to return a verdict of guilty only on such count or counts as they believed beyond a reasonable doubt were sustained by the evidence. No instructions as to the form of the verdict were requested by defendant. No exceptions to the instructions in that regard were taken. No objection was interposed to the reception of the verdict as returned. No motion was made that the jury be directed to retire and further deliberate concerning their verdict and specify therein the particular counts under which they found the defendant guilty. On this record,

unless procedure be deemed primarily a thicket in which to hide, the only fair reading of the verdict is that the jury found defendant guilty as charged in each count of the indictment, because it is manifest that defendant and his counsel must so have understood the verdict when it was returned in the trial court.

The only "devices, prints, and impressions" shown to have been in the possession of defendant were molds in the similitude of coins of the United States and counterfeit coins molded therein. The words "device, print, or impression, or any other thing whatsoever," in section 3, must be read in connection with, and construed as being of the same general nature as, their companion words "business or professional card, notice, placard, token." So read and construed, they do not cover, in our judgment, counterfeit molds and counterfeit coins, the making of which, respectively, is punishable under section 1 of the act in question and section 5457 of the Revised Statutes. We do not believe that Congress intended that one and the same making should constitute both a hundred dollar misdemeanor and a ten-year felony. But the error in letting this count go to the jury was harmless, because the judgment is attributable wholly to the other counts.

Under section 1 the two offenses of "making" and of "having in possession" are of distinctly different natures. "Every person who makes any mold [in the similitude of the genuine coins of the United States] without authority from the Secretary of the Treasury of the United States or other proper officer, shall be punished." "Every person who shall have in his possession any such mold with intent to fraudulently or unlawfully use the same, shall be punished." To protect the integrity of the coins of our country, Congress has absolutely prohibited the unauthorized, the unofficial, making of molds. The purpose or intent with which unofficial molds are made is of no concern. Simply, they must not be made. But respecting possession the matter is inherently different. There are many circumstances under which persons might come into possession of counterfeiting molds, either without knowledge of their character, or with such knowledge but without intent to use them fraudulently or unlawfully, as, for instance, the officers who took and held possession of the molds in question. Mere possession is inherently colorless; but the making of counterfeiting implements is inherently wrong, or at least was a proper matter for Congress to make wrong, as Congress unmistakably has done.

With this understanding of the offense of making unauthorized molds, the conviction under the fifth count was inevitably right. The allegation in that count that defendant made the molds with the intent to use them fraudulently and unlawfully was surplusage. The pleader could not inject into the offense an element that Congress said should not be an element. State v. Southern Rld. Co., 122 N. C. 1052, 30 S. E. 133, 41 L. R. A. 246; 22 Cyc. 448. The allegations that needed to be proven were unequivocally established by defendant when he testified as a witness in his own behalf. So the questions whether, at the conclusion of the government's evidence, there was sufficient proof of the corpus delicti, whether purported oral and written admissions by defendant out of court were properly received in evidence, and

the like, all become immaterial. Whatever infirmities there were in the government's case under the fifth count defendant voluntarily cured.

If we were to accept an assumption that underlies defendant's argument respecting counts 2, 3, and 4, the conviction thereunder might not be sustainable. Proof that defendant's possession of the molds was with the intent to use them fraudulently or unlawfully was indispensable. Defendant's underlying assumption is that the pleaded intent could not be established except by proof that he intended to use the molds to make counterfeit coins with the intent that he should use the counterfeits, or permit them to be used, in defrauding some one. Defendant testified that he made the molds, and used them in making counterfeit coins, but that he had no intent that the counterfeits should be used to defraud any one by passing them as genuine money—that his molds and coins were experiments to see if he could become a proficient caster of medals. Counter evidence was introduced which, the government claims, tended to prove that defendant permitted his minor son to take some of the spurious coins, and that the son defrauded a shopkeeper by obtaining merchandise in exchange for three counterfeit dimes; and the dimes were admitted in evidence. If defendant's assumption were well founded, questions would have to be determined concerning the sufficiency of the identification of the coins and of defendant's connection with his son's unlawful act. But we cannot accept the assumption. Section 5457, denouncing counterfeiting, makes three separate classes of acts the equivalents of each other as offenses, visitable with the same punishment. One is the making of false, forged, or counterfeited coins; another is the passing of them; and the third is the having of them in possession. Now, like in the case of section 1 of the act of February 10, 1891, mere possession (or mere passing) is inherently colorless. So Congress explicitly provided, repeating the clause in each instance, that possession and passing should each be innocent except "with intent to defraud any body politic or corporate, or any other person or persons whatsoever." But with respect to the making of counterfeits, the carefully worded expression of intent, twice inserted elsewhere in the same section, was omitted. And no other expression is used from which intent as an element of the offense of making counterfeits can be inferred. The adverb "falsely" in the opening line qualifies only the verb "makes," because the verbs "forges" and "counterfeits" carry in themselves the idea of falsity. So the purpose or intent with which counterfeit coins are made is of no concern. Simply, they must not be made. U. S. v. Russell (C. C.) 22 Fed. 390; U. S. v. Otey (C. C.) 31 Fed. 68. The act of February 10, 1891, is the later act. It should be read in the light of the elder, in aid of which it was passed. So when we find that Congress had absolutely forbidden the making of counterfeit coins, and in aid of that prohibition has absolutely forbidden the making of unauthorized molds, the intent to use such molds fraudulently or unlawfully should be assigned to the intent to use them for the making of counterfeit coins. The intent to defraud (in the sense of cheating in trade) by section 5457 attaches solely to the possession and the passing

of counterfeits, and not at all to the making. Consequently, the charge, in counts 2, 3, and 4, that defendant had the molds in possession with intent to use them unlawfully (or fraudulently in the sense of committing a fraud upon the government's exclusive right to coin) would be supported by proof that defendant had in his possession unauthorized molds with intent to use them in casting counterfeit coins. And that such were the facts, defendant's own testimony indisputably was sufficient to prove. Therefore the government's undertaking to prove that defendant had a forbidden intent in connection with the use of the coins, as well as a forbidden intent in connection with the use of the molds, was an unnecessary burden, harmful to the prosecution rather than to the defense.

Practically no exceptions were taken to the rulings that are now complained of. Nevertheless we have examined the entire record, and have found no substantial reason for disturbing the action of the trial court.

The judgment is affirmed.