**UNITED STATES ex rel. GIGLIO**

v.

**NEELLY.**

**No. 10857.**

United States Court of Appeals
Seventh Circuit.

Nov. 13, 1953.

Otto Kerner, Jr., U. S. Atty., Anthony Scariano, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., John M. Mc-Whorter, Dist. Counsel, Immigration & Naturalization Service, Chicago, Ill., of counsel, for appellant.

Maurice J. Walsh, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Petitioner, an alien of Italian nationality, entered the United States on November 30, 1905, and has lived here ever since.

He is held for deportation under § 19 of the Immigration Act of 1917.[1] The respondent relies upon prior convictions of two crimes, allegedly involving moral turpitude, as bringing petitioner within the purview of § 19(a).

On March 31, 1932, in the United States District Court, Northern District

---

1. 39 Stat. 889 (1917), as amended, 8 U. S.C. § 155(a) (1946), 8 U.S.C.A. § 155

(a) [now Immigration and Nationality Act, § 241, 8 U.S.C.A. § 1251].

of Illinois, Eastern Division, petitioner was convicted and sentenced to twelve years on his plea of guilty, for violating sections 262, 265 and 276 of Title 18 U.S.C.A. (counterfeiting securities uttering forged obligations of the United States and connecting parts of different bills) and section 88, of the same title (conspiracy to violate the aforesaid sections of Title 18).[2]

Subsequently, petitioner, on March 31, 1941, on his plea of guilty to an indictment grounded on criminal code section 168, 35 Stat. 1120 (1909), 18 U.S.C. § 282 (1946), 18 U.S.C.A. § 282 (1927) was sentenced, to serve eighteen months and to pay a fine of one hundred dollars, in the United States District Court for the District of Rhode Island. He has served both sentences.

Petitioner was arrested on December 26, 1951, upon a warrant of deportation issued by the Immigration and Naturalization Service, and thereafter filed his petition for a writ of habeas corpus. Acting pursuant to an agreement of the parties, the trial court ordered that the answer to the petition, and the amendment thereto, together with the briefs of the respondent stand as his return to the writ; that the briefs of the petitioner stand as a traverse to the return. On his petition, as amended, and the pleadings filed in response thereto, the court below ordered petitioner's discharge from the custody and detention of the respondent. This appeal followed.

■ Petitioner's conviction, on March 31, 1932, was for a crime involving moral turpitude. United States ex rel. Volpe v. Smith, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298. Each of those sections, of the criminal code,[3] under which petitioner was first convicted, contained the words or phrases "to defraud" or "with intent to defraud".

The facts in the main are not disputed, and for the most part are derived from petitioner's own testimony. He was born in Italy in 1899. He was admitted, with his mother and sister, into the United States, at Boston, Massachusetts, for permanent residence November 30, 1905, when he was about eight years of age. He is a peddler and salesman. He never became a naturalized citizen. He was drafted into the United States Army during World War I, and was stationed at Camp Sherman, in Ohio. He did not serve overseas. His father was born in Italy and came to this country about 1904 and died in New York in 1909 without becoming a naturalized citizen.

The basis for deportation in the instant case is: (1) that petitioner is an alien; (2) that he was twice convicted of crimes and sentenced to imprisonment for terms of more than one year; and, (3) that each of said crimes involved moral turpitude.

Petitioner contends that his conviction upon his plea of guilty to a charge of counterfeiting in 1932 was unlawful, invalid and in violation of the Constitution, because he was denied the assistance of counsel and did not intelligently plead guilty to the indictment, because he did not know the consequences of his plea.

He also contends that his conviction in 1941 was unlawful, invalid and in violation of the Constitution, because he did not know the consequence of his plea of guilty would be deportation. However, in view of our disposition of this appeal, we think it is unnecessary to pass upon these last two contentions.

In his amended petition, he alleges that he believed at all times prior to the institution of deportation proceedings against him in 1942 that he was a citizen of the United States by reason of the naturalization of his parents. For some reason or another he claimed citizenship at the immigration hearings and in the District Court on the habeas corpus hearing. First, he claimed citizenship through the naturalization of his parents; then he claimed he was naturalized

2. 1948 Revision, 18 U.S.C.A. §§ 371, 471, 472, 484.

3. 35 Stat. 1096, 1115, 1116, 1119, chap. 321, §§ 37, 148, 151, 162 (1909); 18 U.S.C.A. §§ 88, 262, 265, 276 (1927).

while serving in the United States Army during World War I; he then admitted that he did not make a claim to citizenship before taking an oath of allegiance in what he believed to be a naturalization ceremony while he was in the Army. He admitted that he never had a certificate of naturalization. During the hearing on his petition for a writ of habeas corpus, he indicated he thought that he became a citizen by reason of his service in the Army. He admits he was born in Italy and makes no claim that either of his parents were citizens of the United States before he was born. The record establishes that he was an alien at birth and the Service so found.

In finding of fact number 9 the District Court refers to petitioner's claim to citizenship as follows:

"At the time of his convictions petitioner believed he was an American citizen by reason of his parents' naturalization, prior to his induction into the United States Army in September 1918, and because, while in the army, the Petitioner and many other foreign born persons were assembled and addressed by an officer concerning citizenship and loyalty to the United States, and at the conclusion of his speech, the Petitioner and others in the room rose and recited an oath of loyalty to the United States, although the Petitioner received no certificate or written evidence of citizenship."

■■ The burden of proof in establishing alienage in a deportation proceeding is of course on the Government. United States ex rel. Rongetti v. Neelly, 7 Cir., 207 F.2d 281; United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221. That proof has been met in this case. The burden of establishing his citizenship was upon petitioner. U. S. ex rel. Rongetti v. Neelly, supra. This he has failed to do.

The record of the proceedings before the immigration authorities shows hearings were held at which petitioner was present. The first of such hearings was held on March 21, 1935 in the United States Penitentiary, at Leavenworth, Kansas, while petitioner was serving his first sentence there. He was not represented by counsel at that hearing. The second hearing was held on March 30, 1942, in the United States Penitentiary, at Lewisburg, Pennsylvania, where petitioner was serving his sentence on his second conviction. He was advised by the presiding inspector of his right to be represented by counsel on that hearing and said:

"I am willing to go ahead with the hearing and if necessary I will get counsel later."

The third hearing was held on December 21, 1942, in the county jail, at Williamsport, Pennsylvania. The record shows that petitioner had apparently employed an attorney, but he was not present at the hearing and petitioner said he was willing to proceed with the hearing without his attorney being present.

In United States ex rel. Schlimmgen v. Jordan, 7 Cir., 1948, 164 F.2d 633, 634, we held that:

"Courts may not interfere with administrative determinations unless, upon the record, the proceedings were manifestly unfair, or substantial evidence to support the administrative finding is lacking, or error of law has been committed or the evidence reflects manifest abuse of discretion. Low Wah Suey v. Backus, 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165; Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082. Consequently, inasmuch as the party ordered deported can, in a habeas corpus proceeding, complain only of a failure of the administrative officer in one or more of these respects, the court acts upon the record made in the administrative hearing and may not try the issues de novo upon evidence not submitted in the first instance. Kessler v. Strecker, supra; Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938; Lai To Hong v. Ebey, 7 Cir., 25 F.2d 714. This results from the mandate of the statute, par. (a)

Section 155, Title 8 U.S.C.A., reading: 'In every case where any person is ordered deported from the United States under the provisions of this Chapter, or of any law or treaty, the decision of the Attorney General shall be final.' "

See also United States ex rel. Adamantides v. Neely, 7 Cir., 1951, 191 F.2d 997.

The conclusion we draw from the record of the hearings held before the immigration officers is that they were fairly conducted and petitioner's rights were properly respected.

There is no question that petitioner was twice convicted and sentenced to terms of more than one year or more since his entry into the United States. He does not dispute that his first conviction was for a crime involving moral turpitude.

Respondent seeks to deport this petitioner pursuant to that portion of § 19 of the Immigration Act of 1917, as amended, 8 U.S.C.A. § 155(a), which provides inter alia:

"* * * any alien * * * who [hereafter] is sentenced more than once to such a term of imprisonment (one year or more) because of conviction in this country of *any crime involving moral turpitude,* committed at any time after entry * * * shall, upon the warrant of the Attorney General, be taken into custody and deported."[4] (Italics supplied.)

Resisting deportation, the petitioner urges, among other things, that his conviction for violating criminal code section 168, 35 Stat. 1120 (1909), 18 U.S.C. § 282 (1946), was not of a crime involving moral turpitude. At the time when petitioner entered his plea of guilty to the indictment, bottomed on that section, it provided:

"Whoever, not lawfully authorized shall make, issue, or pass, or cause to be made, issued, or passed, any coin, card, token, or device in metal, or its

compounds, which may be intended to be used as money for any one-cent, two-cent, three-cent, or five-cent piece, now or hereafter authorized by law, or for coins of equal value, shall be fined not more than one thousand dollars and imprisoned not more than five years."

■ With deceptive simplicity § 19 (a) supra, describes deportable conduct as being that which results in convictions of crimes involving moral turpitude. But that section contains no definition of moral turpitude. Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886, rehearing denied 341 U.S. 956, 71 S.Ct. 1011, 95 L.Ed. 1377. Nor can we explore beyond the record of conviction in order to evaluate the quality of petitioner's conduct. United States ex rel. Zaffarano v. Corsi, 2 Cir., 63 F.2d 757. By his plea of guilty petitioner admitted that his acts were of the kind proscribed by section 168, 18 U.S.C. § 282 (1946).

There is no doubt but what moral turpitude is the yardstick by which petitioner's crime must be measured in this case. And it must be applied to the particular statutory provision under which this petitioner was convicted. But examination of criminal code, section 168, 18 U.S.C. § 282, fails to disclose explicit language demonstrating that the Congress intended to go beyond inhibiting those specific acts it has there enumerated. Familiar statutory phraseology concerning fraud is conspicuous by its absence from this section. Moreover, any suggestion of the taint which would support deportation, here, would have to come from sources outside § 168.

■ Our approach, here, is aptly described by the observation made during the course of the opinion in United States ex rel. Robinson v. Day, 2 Cir., 1931, 51 F.2d 1022–1023:

"Neither the immigration officials, nor we, may consider the circumstances under which the crime

4. 39 Stat. 889, as amended, 8 U.S.C. § 155(a).

was in fact committed. When by its definition it does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral * * * (cases collected). Conversely, when it does, no evidence is competent that he was in fact blameless. * * *"

The court below made findings of fact and gave its conclusions of law. Its fourth conclusion of law correctly held that:

"The pleadings, exhibits and evidence show that the Petitioner's second conviction on March 31, 1941, was for violation of former section 282, Title 18, U.S.C., and was based upon an indictment and the Petitioner's plea of guilty thereto. The court finds that as a matter of law that this conviction did not involve moral turpitude, and, therefore, is not a proper basis for deportation under Section 155, Title 8, U.S.C."

We are not unmindful of the myriad decisions sponsoring various concepts of moral turpitude. While they attest to the frequency of investigation on this definitional problem,[5] they offer no well-settled criteria which can be fairly applied here. For this court to find moral turpitude within the narrow confines of the particular statutory framework, now under review, would require resort to judicial fiat. According full recognition to the drastic measure, Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433, sought to be invoked here, precipitates our reluctance to stamp petitioner's second conviction as one involving moral turpitude.

In passing, we note that at the time when petitioner was sentenced under criminal code, former, section 168, 35 Stat. 1120 (1909), 18 U.S.C. § 282 (1946) it provided for both a fine of not more than $1,000 and imprisonment for not more than five years. Subsequently, this penal provision[6] was put in the alternative and the term of imprisonment reduced to a maximum of one year.

**5.** E. g. U. S. ex rel. McKenzie v. Savoretti, 5 Cir.1952, 200 F.2d 546 (forgery, uttering and larceny); Bermann v. Reimer, 2 Cir., 1941, 123 F.2d 331 (obtaining goods by false representations); U. S. ex rel. Berlandi v. Reimer, 2 Cir., 1940, 113 F.2d 429 (evasion of revenue taxes); Maita v. Haff, 9 Cir., 1940, 116 F.2d 337 (violation of prohibition laws); Mercer v. Lence, 10 Cir., 1938, 96 F.2d 122, certiorari denied 1938, 305 U.S. 611, 59 S.Ct. 69, 83 L.Ed. 388 (conspiracy to defraud by deceit and falsehood); Guarneri v. Kessler, 5 Cir., 1938, 98 F.2d 580, certiorari denied 1938, 305 U.S. 648, 59 S.Ct. 229, 83 L.Ed. 419 (conspiracy to smuggle and conceal imported alcohol with intent to defraud the revenue); United States ex rel. Popoff v. Reimer, 2 Cir., 1935, 79 F.2d 513 (fraudulently aiding an alien not entitled to naturalization to apply for citizenship); NG Sui Wing v. U. S., 7 Cir., 1931, 46 F.2d 755 (rape); Lane ex rel. Cronin v. Tillinghast, 1 Cir., 1930, 38 F.2d 231 (lewdness); United States ex rel. Allessio v. Day, 2 Cir., 1930, 42 F.2d 217 (manslaughter and counterfeiting); Tillinghast v. Edmead, 1 Cir., 1929, 31 F.2d 81 (larceny); United States ex rel. Medich

v. Burmaster, 8 Cir., 1928, 24 F.2d 57 (concealing assets belonging to trustee in bankruptcy); Weedin v. Tayokichi Yamada, 9 Cir., 1925, 4 F.2d 455 (assault with a deadly weapon).

Moral turpitude was found not to be involved in United States ex rel. Leibowitz v. Schlotfeldt, 7 Cir., 1938, 94 F.2d 263 (irrelevant misrepresentation; absence of intention to defraud); United States ex rel. Iorio v. Day, 2 Cir., 1929, 34 F.2d 920 (violation of National Prohibition Act); Bartos v. United States District Court, 8 Cir., 1927, 19 F.2d 722 (violation of National Prohibition Act); Coykendall v. Skrmetta, 5 Cir., 1927, 22 F.2d 120 (violation National Prohibition Act); United States v. Francioso, 2 Cir., 1947, 164 F.2d 163 (marriage to niece).

**6.** 18 U.S.C.A. § 491(a) now provides:
"Whoever, not lawfully authorized, makes, issues, or passes any coin, card, token, or device in metal, or its compounds, which may be intended to be used as money for any 1-cent, 2-cent, 3-cent, or 5-cent piece, authorized by law, or for coins of equal value, shall be fined not more than $1000 or imprisoned not more than one year, or both."

The crime committed must itself involve moral turpitude.

The statute is silent as is the indictment that the crime involved in petitioner's second conviction was one involving moral turpitude.

We think the immigration officials committed an error of law in finding that the crime for which petitioner was convicted on March 31, 1941, was one involving moral turpitude.

We are in accord with the view expressed by the District Court that the petitioner's second conviction was for a crime that did not involve moral turpitude. Hence we deem it unnecessary to pass upon other points raised by the parties.

The judgment of the District Court discharging petitioner from custody is therefore affirmed.