MATTER OF AWAIJANE

In Deportation Proceedings

A–18981180

*Decided by Board April 5, 1972*

(1) Respondent's 1967 conviction in Lebanon of attempted murder in 1964, a crime involving moral turpitude, for which he was sentenced to 7½ years with sentence commuted to 6 months imprisonment is not a conviction classifiable as a "petty offense" within the meaning of section 212(a)(9) of the Immigration and Nationality Act, as amended.

(2) Notwithstanding conviction occurred within the statutory 5-year-period, since the offense of which convicted was committed more than 5 years ago, respondent is not precluded by the provisions of section 101(f) of the Act from a finding of good moral character during the requisite period for the purpose of establishing statutory eligibility for voluntary departure under section 244(e) of the Act.

(3) A waiver of inadmissibility under section 212(d)(3)(A) of the Act is, by the specific terms of that provision, applicable only to admission as a nonimmigrant.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—nonimmigrant visitor—remained longer.

ON BEHALF OF RESPONDENT:
John W. Harrigan, Esquire
1712 First National Bank Bldg.
Minneapolis, Minnesota 55402

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

This case presents an appeal from an order of the special inquiry officer denying respondent's applications for adjustment of status pursuant to section 245 of the Immigration and Nationality Act, as amended, and for the privilege of voluntary departure. He ordered that the respondent be deported to Lebanon. The respondent's deportability was conceded through counsel and has been established by clear, convincing and unequivocal evidence. The special inquiry officer's denial of section 245 relief is affirmed. We find the respondent eligible for voluntary departure and will grant him that privilege.

The respondent, a native and citizen of Lebanon, age 36, has

117

resided in the United States since his arrival here in October 1969 as a visitor for pleasure. He has been granted a waiver under section 212(d)(3)(A) of the Act in order to visit his sick mother for a period of one month. A fifth preference visa petition, filed in his behalf by a United States citizen brother, was approved in January 1970. His application for permanent residence was denied by the District Director, however, for the reason that he was inadmissible under section 212(a)(9) on the basis of his conviction in 1967 for the crime of attempted murder in 1964.

The following facts relate to the offense for which respondent was convicted. Aware of rumors that his wife was involved in an illicit relationship, the respondent encountered the accused lover one evening after observing him in the company of his wife. A scuffle ensued and both men were stabbed with knives prohibited by law. The enraged respondent then entered his home and stabbed his wife several times with the apparent intent to murder her. All three individuals were hospitalized. The respondent's wife and her male friend were later acquitted of adultery charges. A Lebanese court found the respondent guilty of the felony of attempted murder under Article 547 of the criminal law and imposed upon him a sentence of seven and one-half years. The sentence was commuted to six months' imprisonment on the ground that there was some apparent justification for the respondent's outburst. Respondent is now divorced from his wife and she has remarried. Their three children, ranging in age from 9 to 16, still reside in Lebanon with respondent's sister and he contributes to their support. Beside his mother, respondent also has two brothers living in the United States. He has been steadily employed here.

Counsel asserts on appeal that respondent is not ineligible for section 245 relief as one inadmissible under section 212(a)(9) of the Act. He contends (1) that the Lebanese conviction was not for a crime involving moral turpitude; and (2) in any event, the conviction comes within the "petty offense" exception of section 212(a)(9). We reject both arguments and sustain the special inquiry officer's conclusion that respondent is inadmissible under section 212(a)(9).

Whether a particular crime involves moral turpitude is determined by the standard prevailing in the United States, *Mercer v. Lence*, 96 F.2d 122 (C.A. 10, 1938), cert. denied 305 U.S. 611. Moral turpitude inheres in the intent. We have held that malicious intention or what is equivalent to such intention is the broad boundary between crimes involving moral turpitude and those which do not, *Matter of P—*, 3 I. & N. Dec. 56 (BIA, 1948), and *Matter of E—*, 2 I. & N. Dec. 134 (BIA, 1944). There is no distinction for immigration purposes in respect to moral turpitude, between

118

the commission of the substantive crime and the attempt to commit it; *U.S. ex rel. Meyer v. Day*, 54 F.2d 336 (C.A. 2, 1931). The term moral turpitude has been defined by the Attorney General as anything done contrary to justice, honesty, principle, or good morals; an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow man, or to society in general, *Matter of Sloan*, 12 I. & N. Dec. 840, 849, 854 (BIA, 1968). On the record before us, we conclude that the crime of which the respondent was convicted did involve moral turpitude, cf. *Matter of Szegedi*, 10 I. & N. Dec. 28 (AG 1962).

Under 18 U.S.C. 1, any offense punishable by death or imprisonment for a term exceeding one year is a felony, any other offense is a misdemeanor. Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense. The statute further provides, however, that whoever attempts to commit murder or manslaughter, shall be fined not more than $1,000 or imprisoned not more than three years or both, 18 U.S.C. 1113. Thus, attempted murder is a felony since the statute provides for a possible term of imprisonment exceeding the six months limitation provided for conviction of a misdemeanor.

We also reject counsel's contention that the waiver of inadmissibility as a nonimmigrant under section 212(d)(3)(A) of the Act affects his inadmissibility under section 212(a)(9) for purposes of entry as an immigrant. A waiver under section 212(d)(3)(A) is, by the specific terms of that provision, applicable only to admission as a nonimmigrant.

Counsel also challenges on appeal the denial of voluntary departure. That privilege was denied by the special inquiry officer on both the finding of ineligibility and in the exercise of discretion. We hold that the special inquiry officer erred in concluding that the statute precludes a finding of good moral character, a prerequisite to voluntary departure eligibility. The special inquiry officer found as fact that the Lebanese crime had been committed within the statutory five-year period. This was erroneous; the offense occurred in 1964. In our view, that offense does not fall within any of the provisions of the act which preclude a finding of good moral character as a matter of law.

As we pointed out in *Matter of Gantus-Bobadilla*, 13 I. & N. Dec. 777 (BIA, 1971), prior to the enactment of the Immigration and Nationality Act of 1952, there was no statutory definition of, or limitation on a finding of, good moral character. Applying the standards then permitted, the courts reached different conclusions with respect to the permissibility of a finding of good moral character in the case of an alien who had been convicted of

119

murder, *Petition of Sperduti,* 81 F. Supp. 833 (M.D. Pa., 1949); *In re Balestrieri,* 59 F. Supp. 181 (N.D. Cal., 1945); *In re Caroni,* 13 F.2d 954 (N.D. Cal., 1926); *In re Ross,* 188 Fed. 685 (M.D. Pa., 1911).

Section 101(f) of the 1952 Act set up a group of eight categories of aliens who were precluded from showing good moral character during the required statutory period. In most of the categories, the proscribed conduct had to take place during the statutory period to preclude a finding of good moral character as a matter of law. The eighth category, however, precluded such a finding in the case of "one who *at any time* had been convicted of the crime of murder." (Emphasis added.) Had the respondent been convicted of murder, he would clearly be barred by this provision. However, respondent's offense was, at most, attempted murder, which falls within none of the eight categories specified by Congress. We cannot therefore conclude that this offense, committed outside the statutory five-year period for which good moral character is required by section 244(e) of the Act, bars eligibility for voluntary departure as a matter of law.

Neither is such a conclusion required by the concluding sentence of section 101(f): "The fact that any person is not within any of the foregoing classes shall not preclude a finding *that for other reasons* such person is or was not of good moral character." (Emphasis added.) Since Congress has not listed attempted murder as an offense which precludes a finding of good moral character as a matter of law no matter when committed, we may not indirectly add it to the eight enumerated categories by the simple device of lumping it in with the "for other reasons" category. The latter was designed to point out that, even if a person did not come within any of the eight categories barred as a matter of law, he could for some other reason be found to be lacking in good moral character as a matter of fact. In that event, of course, the pertinent standards would be those generally applied.

There is nothing in the record to indicate that, since his 1964 offense, respondent has behaved in a manner incompatible with the accepted standards of the community. He has been regularly employed since his arrival in the United States two and one-half years ago and has contributed very generously to the support of his three children in Lebanon. The respondent apparently has had no difficulty with the law since coming to this country. On this record, denial of this minimal form of relief as a matter of discretion does not seem to us to be warranted. We shall therefore sustain the appeal insofar as it concerns the denial of voluntary departure and shall grant that privilege within such period and under such conditions as may be fixed by the District Director.

**ORDER:** The appeal is dismissed so far as concerns denial of the application for adjustment of status under section 245.

*It is further ordered* that the outstanding order of deportation be withdrawn and the alien be permitted to depart from the United States voluntarily to the country of his choice without expense to the Government within such period of time as the District Director directs and upon his failure to depart in accordance with the foregoing, the respondent shall be deported to Lebanon on the charge contained in the order to show cause.