# MATTER OF SERNA

## In Deportation Proceedings

## A-26757902

### Decided by Board October 14, 1992

(1) Neither the seriousness of a criminal offense nor the severity of the sentence imposed therefor is determinative of whether a crime involves moral turpitude.

(2) A conviction under 18 U.S.C. § 1546 (1982) for possession of an altered immigration document with knowledge that it was altered, but without its use or proof of any intent to use it unlawfully, is not a conviction for a crime involving moral turpitude.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. § 1251(a)(1)]—Excludable at entry under section 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF RESPONDENT:
Peter R. Giordano, Esquire
2441 "E" Street
San Diego, California 92102

ON BEHALF OF SERVICE:
Joseph M. Ragusa
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated February 21, 1986, the immigration judge found the respondent deportable under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1) (1982),[1] as an alien

---

[1] This section of the Act has been revised and redesignated as section 241(a)(1)(A) of the Act, 8 U.S.C. § 1251(a)(1)(A) (Supp. II 1990), by section 602(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5078 ("1990 Act"), but that amendment does not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991. *See* section 602(d) of the Immigration Act of 1990, 104 Stat. at 5082. We note that the respondent could also have properly been charged and found deportable under section 241(a)(5) of the Act on the basis of his conviction under 18 U.S.C. § 1546 (1982), in which case he would have been within the enumerated statutory grounds of deportability which would render him ineligible for voluntary departure unless additional requirements could be met. *See* section 244(e)(1) of the Act, 8 U.S.C. § 1254(e)(1) (1982); *Matter of T-*, 5 I&N Dec. 459 (BIA 1953) (holding that alien is not statutorily barred from voluntary departure unless ordered deported on that ground); *see also Matter of Lozada*, 19 I&N Dec. 637, 640 (BIA 1988).

excludable at entry under section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1982),[2] as an immigrant without a valid visa. He further denied the respondent's request for voluntary departure and ordered him deported from the United States to Mexico. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a native and citizen of Mexico who entered the United States on January 7, 1985, without a valid immigrant visa. The record reflects that he was convicted on August 19, 1985, in the United States District Court for the Southern District of California, of possession of an altered immigration document in violation of 18 U.S.C. § 1546 (1982). He received a 3-year prison sentence, the execution of which was suspended, and he was placed on probation for 3 years.

At his deportation hearing, the respondent conceded deportability and applied for voluntary departure in lieu of deportation. The immigration judge denied his request, finding that he was statutorily ineligible for relief because his conviction was for a crime involving moral turpitude, which placed him within the class of persons described in section 212(a)(9) of the Act[3] and therefore precluded him from establishing good moral character under section 101(f)(3), 8 U.S.C. § 1101(f)(3) (1982). In thus concluding, the immigration judge relied on our decision in *Matter of Flores*, 17 I&N Dec. 225 (BIA 1980). The immigration judge also determined that the respondent's request for voluntary departure should be denied in the exercise of discretion.

On appeal the respondent argues that the immigration judge abused his discretion in finding that the offense of which he was convicted was a crime involving moral turpitude. The respondent has presented several bases for this claim. First, he contends that the gravity of his crime is reflected by the light sentence which may be imposed for a violation of 18 U.S.C. § 1546 and by the sentence which he in fact received. He reasons that his offense was "slight" in comparison to the others included in 18 U.S.C. § 1546 and therefore should not be considered to involve moral turpitude. The respondent further regards

---

*But cf. Matter of Correa-Garces*, 20 I&N Dec. 451 (BIA 1992) (holding that conviction precluding establishment of good moral character for purposes of voluntary departure need not be the basis of deportability).

[2] Revised and redesignated as section 212(a)(7)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (Supp. II 1990), by section 601(a) of the Immigration Act of 1990, 104 Stat. at 5074.

[3] Revised and redesignated as section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (Supp. II 1990), by section 601(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. at 5067.

as "ill-founded" the immigration judge's analogy of his conviction to that in *Matter of Flores, supra,* for uttering and selling false and counterfeit paper relating to the registry of aliens. He attempts to distinguish *Matter of Flores,* again claiming that his crime was not as serious because he received no financial gain other than his ability to remain in this country to support his fiancee and his child. Finally, the respondent notes the immigration judge's statement that 18 U.S.C. § 1546 contains broad language, encompassing both crimes which involve moral turpitude and those which do not, and he proposes that any doubts in this regard should be resolved in his favor.

In order to be eligible for voluntary departure, the respondent was required to establish, inter alia, that he was a person of good moral character for at least 5 years immediately preceding his application for such relief. Section 244(e)(1) of the Act, 8 U.S.C. § 1254(e)(1) (1982).[4] Section 101(f)(3) of the Act, in part, precluded a person from establishing good moral character if he was a member of a class of persons, whether excludable or not, described in section 212(a)(9) of the Act, i.e., those convicted of a crime involving moral turpitude, if the offense was committed during the requisite 5-year period.[5] We must therefore determine whether the crime of which the respondent was convicted involves moral turpitude.[6]

At the outset, we note that neither the seriousness of the offense nor the severity of the sentence imposed is determinative of whether a crime involves moral turpitude. It is rather a question of the offender's evil intent or corruption of the mind. *See Matter of Flores, supra;*

---

[4] Section 244(e)(1) of the Act, which bars aliens within the provisions of certain specified grounds of deportation from establishing eligibility for voluntary departure unless additional requirements are met, was amended by section 603(b)(4)(A) of the Immigration Act of 1990, 104 Stat. at 5085, to change the paragraph numbers of section 241(a) enumerated therein to conform to the revisions made to the deportation grounds in the 1990 Act. However, inasmuch as there were no relevant substantive changes made to the voluntary departure provisions of the statute, we shall make reference in our decision to the Act as it was constituted at the time the case was before the immigration judge.

[5] Section 101(f)(3) of the Act was also amended in a manner similar to section 244(e)(1) by sections 603(a)(1)(A) and (B) of the Immigration Act of 1990, 104 Stat. at 5082, to conform to the amendments to the exclusion grounds.

[6] We note that a similar question arose in *Matter of Wadud,* 19 I&N Dec. 182 (BIA 1984), which involved the issue of eligibility for relief under section 212(c) of the Act. We declined to address it there, finding it unnecessary in light of our refusal to expand the scope of section 212(c) in cases where the ground of deportability charged is not also a ground of inadmissibility. However, in that case the alien, found deportable under section 241(a)(5) of the Act, argued that his conviction under 18 U.S.C. § 1546, for aiding and abetting another alien to obtain a visa by means of a false or fraudulent claim, was for a crime involving moral turpitude, which would render him excludable under section 212(a)(9) of the Act and therefore eligible for a waiver of inadmissibility.

*Matter of Abreu-Semino*, 12 I&N Dec. 775 (BIA 1968). We have stated that a crime involving moral turpitude is an act which is per se morally reprehensible and intrinsically wrong or malum in se. *Matter of Flores, supra,* at 227. The term "moral turpitude" has also been defined by the Attorney General as

> anything done *contrary to justice,* honesty, principle, or good morals; an act of baseness, vileness or depravity in the private and *social duties* which a man owes to his fellow man, or to *society in general* contrary to the accepted and customary rule of right and duty between man and man.

37 Op. Att'y Gen. 293, 294 (1933), *quoted in Matter of Sloan*, 12 I&N Dec. 840, 849 (BIA 1966; A.G. 1968) (dissenting opinion); *see also Matter of McNaughton*, 16 I&N Dec. 569 (BIA 1978), *aff'd,* 612 F.2d 457 (9th Cir. 1980); *Matter of Awaijane*, 14 I&N Dec. 117 (BIA 1972).

Thus, the fact that a crime may be considered only a minor offense does not preclude a finding that it involves moral turpitude. For example, we have held that the crimes of petty larceny and issuance of worthless checks involve moral turpitude. *See, e.g., Matter of Bart*, 20 I&N Dec. 436 (BIA 1992); *Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981); *Matter of Khalik*, 17 I&N Dec. 518 (BIA 1980); *Matter of Logan*, 17 I&N Dec. 367 (BIA 1980); *Matter of Esfandiary*, 16 I&N Dec. 659 (BIA 1979). On the other hand, such crimes as importation, sale, or possession of drugs, which are deemed to be quite serious and have harmful consequences, do not involve moral turpitude, because evil intent is not an element of the offense. *See Matter of Abreu-Semino, supra; Matter of R-,* 4 I&N Dec. 644 (C.O., BIA 1952); *Matter of V-,* 1 I&N Dec. 293 (BIA 1942). *But see Matter of Y-,* 2 I&N Dec. 600 (BIA 1946).

Furthermore, the severity of the sentence imposed on a convicted criminal does not necessarily reflect whether his offense involves moral turpitude. *Gonzales v. Barber*, 207 F.2d 398, 400 (9th Cir. 1953), *aff'd,* 374 U.S. 637 (1954); *United States ex rel. Zaffarano v. Corsi*, 63 F.2d 757 (2d Cir. 1933). A crime may be a fraudulent or inherently evil act, and therefore one involving moral turpitude, but the sentencing judge may nevertheless decide it does not warrant a severe punishment due to its petty nature or some mitigating circumstances surrounding the criminal act.[7] *See Matter of McNaugh-*

---

[7] We note, however, that under the law existing at the time of the immigration judge's decision, an alien convicted of a crime considered to be one involving moral turpitude might nonetheless not fall within the provisions of section 212(a)(9) of the Act, because the statute included an exception for "the conviction of a misdemeanor classifiable as a petty offense ... by reason of the punishment actually imposed." Section 212(a)(9) of the Act. Since the respondent's offense was a felony, this exception was not applicable to his case. *See Matter of Salvail*, 17 I&N Dec. 19 (BIA 1979). We note that this "petty offense" exception was subsequently amended by the Comprehensive Crime Control

*ton, supra,* at 575; *see also, e.g., Matter of Sanchez,* 17 I&N Dec. 218 (BIA 1980) (mail fraud conviction with 1-year suspended sentence). We therefore find no merit to the respondent's contentions that his crime is not one involving moral turpitude because of the insignificance of his offense or the light sentence he received.

We turn now to the statute under which the respondent was convicted to examine the nature of his crime. The statute provides as follows:

> Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, or document, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained ... [s]hall be fined not more than $2,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1546 (1982).

In his decision, the immigration judge determined from the information issued against the respondent that he was convicted of the use and possession of an altered immigrant visa with the knowledge that it had been altered, and he concluded that this offense was one involving moral turpitude. Were it the case that the conviction included the use of an altered visa, we would agree that it was for a crime involving moral turpitude because of the strong similarity of that offense to the crime discussed in *Matter of Flores, supra.* However, the judgment of conviction in this case states unambiguously that the respondent was convicted of possession of an altered immigration document, so we must consider only whether that offense involves moral turpitude. *See generally Matter of B-,* 6 I&N Dec. 98, 106 (BIA 1954); *Matter of S-,* 2 I&N Dec. 353, 357 (BIA, A.G. 1945). Our review of the myriad cases dealing with the issue of moral turpitude convinces us that it does not.

It has been stated that "it is in the intent that moral turpitude inheres." *United States ex rel. Meyer v. Day,* 54 F.2d 336, 337 (2d Cir. 1931); *see also United States ex rel. Shladzien v. Warden of Eastern State Penitentiary,* 45 F.2d 204 (E.D. Pa. 1930); *Matter of Abreu-Semino, supra; Matter of R-, supra.* Thus, we have acknowledged that the "violation of statutes which merely license or regulate and impose criminal liability without regard to evil intent do not involve moral turpitude." *Matter of G-,* 7 I&N Dec. 114, 118 (BIA 1956); *see also*

Act of 1984, Pub. L. No. 98-473, § 220(a), 98 Stat. 1837, 2027-28. *See Matter of Castro,* 19 I&N Dec. 692 (BIA 1988). It was also further amended by the 1990 Act and now depends on the maximum penalty possible for the crime and the length of the prison sentence imposed. *See* section 212(a)(2)(A)(ii)(II) of the Act, 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (Supp. III 1991).

*Matter of H-*, 1 I&N Dec. 394 (BIA 1943).[8] We must therefore look to the nature of the respondent's crime in order to determine if it involves evil intent.

Our review of crimes relating to possession reveals that some are considered to involve moral turpitude while others are not. We have stated that criminal possession is a crime involving moral turpitude when accompanied by the intent to commit a crime involving moral turpitude. *Matter of Jimenez*, 14 I&N Dec. 442 (BIA 1973) (holding that possession of forgery devices with the intent to use them for forgery involves moral turpitude). Thus, carrying or possessing a concealed weapon has been held to involve moral turpitude only when the intent to use it against another person has been established. *United States ex rel. Andreacchi v. Curran*, 38 F.2d 498 (S.D.N.Y. 1926); *Ex parte Saraceno*, 182 F. 955 (S.D.N.Y. 1910); *Matter of Granados*, 16 I&N Dec. 726 (BIA 1979); *Matter of S-*, 8 I&N Dec. 344 (BIA 1959). Similarly, possession of burglary tools is not a crime involving moral turpitude unless accompanied by an intent to commit a turpitudinous offense such as larceny. *United States ex rel. Guarino v. Uhl*, 107 F.2d 399 (2d Cir. 1939); *Matter of S-*, 6 I&N Dec. 769 (BIA 1955).

The offense of possession of counterfeit obligations of the United States has also been held to involve moral turpitude since the statute includes the intent to defraud, which has been deemed by the Supreme Court in *Jordon v. DeGeorge*, 341 U.S. 223, 232 (1951), to be the "touchstone" for judging whether a crime involves moral turpitude. *Lozano-Giron v. INS*, 506 F.2d 1073 (7th Cir. 1974); *see also Winestock v. INS*, 576 F.2d 234 (9th Cir. 1978). Similarly, possession of counterfeit coins and the dies for making such coins was found to involve moral turpitude where Congress included the requirement of intent to defraud in the statutes prohibiting such acts. *Matter of K-*, 7 I&N Dec. 178 (BIA 1956), *rev'd on other grounds, Matter of Flores*, 17 I&N Dec. 225 (BIA 1980).[9] However, where intent to defraud was

---

[8] It has also been noted that the "moral turpitude" that may be involved in a crime does not exist merely because there has been a crime. a violation of law. . . . The "moral turpitude" must exist entirely apart from the fact that some statute has been violated. If a crime is one involving moral turpitude it is because the act denounced by the statute grievously offends the moral code of mankind and would do so even in the absence of a prohibitive statute. *United States v. Carrollo*, 30 F. Supp. 3, 6 (W.D. Mo. 1939).

[9] *Matter of K-*, *supra*, was overruled in part by *Matter of Flores*, *supra*, to the extent that it held that the offense of making counterfeit coins was not a crime involving moral turpitude simply because the statute did not include the element of intent to defraud, which we found in *Flores* to be inherent in the crime. *Cf. United States ex rel. Giglio v. Neelly*, 208 F.2d 337 (7th Cir. 1953) (holding that making counterfeit coins is not a crime involving moral turpitude because intent to defraud was absent from the statute). In *Matter of K-*, the Board reached its conclusion from the discussion in *Kaye v. United*

584

absent from statutes prohibiting the possession of distilled spirits without a required revenue stamp and the possession of such counterfeit stamps, we held that the acts outlawed thereby did not involve moral turpitude. *Matter of G-, supra; see also Matter of Lethbridge,* 11 I&N Dec. 444 (BIA 1965) (holding that possession of securities made after the similitude of United States securities is not a crime involving moral turpitude).

The statute under which the respondent was convicted does not specifically include the element of fraud. Although it requires knowledge that the immigration document was altered, such knowledge is not necessarily equated with the intention to use the document to defraud the United States Government.[10]

It is well established that an offense must necessarily involve moral turpitude in order for a conviction for that crime to support an order of deportation. *See United States ex rel. Zaffarano v. Corsi,* 63 F.2d 757 (2d Cir. 1933); *United States ex rel. Robinson v. Day,* 51 F.2d 1022 (2d Cir. 1931); *United States ex rel. Mylius v. Uhl,* 210 F. 860 (2d Cir.

---

*States,* 177 F. 147 (7th Cir. 1910), in which the court contrasted the offenses of making counterfeit coins and molds, which it found to be inherently wrong, with the crimes of possession of such coins and molds, which were deemed "inherently colorless" and therefore required the statutory inclusion by Congress of the element of intent to defraud. *Id.* at 150-51. In its opinion, the court noted that "[t]here are many circumstances under which persons might come in possession of counterfeiting molds, either without knowledge of their character, or with such knowledge but without intent to use them fraudulently or unlawfully . . . ." *Id.* at 150. *But see Baender v. United States,* 260 F. 832 (9th Cir. 1919) (stating that criminal intent is to be inferred from the unlawful possession of counterfeit dies because it implies both will and action on the part of the possessor).

[10] We note that possession of stolen goods or mail, with the knowledge that they are stolen, has been held to be a crime involving moral turpitude. *See Okoroha v. INS,* 715 F.2d 380 (8th Cir. 1983); *Matter of Salvail, supra; see also Winestock v. INS, supra* (holding that intent to defraud is implicit in the nature of the crime of passing counterfeit obligations as genuine because intent to pass worthless obligations with knowledge of their counterfeit nature is indistinguishable from general intent to deceive the Government and any recipients of the obligations). Furthermore, guilty knowledge sufficient to support a finding of moral turpitude has been inferred simply from the possession of stolen goods where the statute permits such an inference from certain circumstances. *See Wadman v. INS,* 329 F.2d 812 (9th Cir. 1964); *Matter of R-,* 6 I&N Dec. 772 (BIA 1955); *see also Baender v. United States, supra* (stating that a criminal intent is to be inferred from the unlawful possession of counterfeit dies). However, we find these cases to be distinguishable from possession of an altered immigration document. It is inherently wrong to deprive another person of his property by theft. *See, e.g., Matter of Grazley,* 14 I&N Dec. 330 (BIA 1973); *Matter of Neely and Whylie,* 11 I&N Dec. 864 (BIA 1966). Therefore, it is also wrong to perpetuate the harm already inflicted by continuing to possess goods which are known or should be known to be stolen. However, in the case of an altered document, the Government has not been harmed until a person actually uses it or intends to use it for fraudulent or deceitful purposes.

1914); *United States ex rel. Valenti v. Karnuth*, 1 F. Supp. 370 (N.D.N.Y. 1932). It is equally clear that any doubts in deciding such questions must be resolved in the alien's favor. *Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948); *United States ex rel. Giglio v. Neelly*, 208 F.2d 337 (7th Cir. 1953); *Matter of Hou*, 20 I&N Dec. 513 (BIA 1992).

Circumstances may exist under which the respondent might not have had the intent to use the altered immigration document in his possession unlawfully. Therefore, we do not consider it appropriate to hold that the offense of which he was convicted is one involving moral turpitude. *See United States ex rel. Guarino v. Uhl*, *supra* (holding that possession of burglary tool with intent to use it to commit some crime which might not involve moral turpitude is not a crime involving moral turpitude); *Kaye v. United States*, 177 F. 147 (7th Cir. 1910) (stating that there are many circumstances under which a person might possess counterfeit molds without intent to use them fraudulently or unlawfully); *Matter of K-*, 2 I&N Dec. 90 (BIA 1944) (finding that receipt of stolen goods without knowledge they are stolen or without intent to deprive owner of his possession is not a crime involving moral turpitude). Accordingly, we find that the crime of possession of an altered immigration document with the knowledge that it was altered, but without its use or proof of any intent to use it unlawfully, is not a crime involving moral turpitude. Consequently, the respondent is not barred from establishing eligibility for voluntary departure under section 101(f)(3) of the Act as an alien convicted of a crime involving moral turpitude.

However, voluntary departure is a form of discretionary relief, and the immigration judge determined that the respondent did not merit a favorable exercise of discretion. While he noted that the respondent had been residing in the United States for 7 years and intended to marry a United States citizen with whom he had a child, the immigration judge concluded that the respondent's conviction presented a serious adverse factor which, on balance, warranted denial of the privilege of voluntary departure as a matter of discretion. As we agree with the immigration judge, and the respondent has offered no argument to the contrary on the issue of discretion, we will not disturb his finding in this regard. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

586